1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    JESSICA A. DEVERS,                              Case No. 18-cv-04215-EMC

8              Plaintiff,

9         v.                                          **ORDER DENYING DEFENDANTS'**
                                                      **MOTION FOR SUMMARY**
10   CARPENTERS HEALTH AND WELFARE                    **JUDGMENT AND GRANTING**
     TRUST FUND FOR CALIFORNIA, et al.,               **PLAINTIFF'S MOTION FOR**
11                                                    **JUDGMENT**
               Defendants.
12                                                    Docket Nos. 35-36

13

14        Plaintiff Jessica Devers has filed suit against two affiliated entities, namely, the Carpenters

15   Health & Welfare Trust Fund for California ("Carpenters Trust Fund") and the Carpenters Funds

16   Administrative Office of Northern California, Inc. ("Carpenters AO"). The Carpenters Trust Fund

17   and the Carpenters AO shall hereinafter be referred to collectively as "Carpenters."

18        The Carpenters Trust Fund is an employee welfare benefit plan within the meaning of

19   ERISA, and the Board of Trustees for the Carpenters Trust Fund has delegated administration of

20   benefit claims to the Carpenters AO. Ms. Devers is a beneficiary of the Carpenters Trust Fund.

21   Ms. Devers filed the instant ERISA lawsuit against Carpenters after a request for benefits was

22   denied. More specifically, Ms. Devers asked that coverage be provided for a prescription drug

23   known as Chemet, which she asserts is the only effective way of treating skin lesions she has as a

24   result of Grover's disease. That request for coverage was denied. Ms. Devers now challenges that

25   denial.

26        Currently pending before the Court are two motions: (1) Carpenters' motion for summary

27   judgment pursuant to Federal Rule of Civil Procedure 56 and (2) Ms. Devers's motion for

28   judgment pursuant to Federal Rule of Civil Procedure 52. Having considered the parties' briefs

and accompanying submissions, as well as the oral argument of counsel, the Court hereby

**DENIES** Carpenters' motion and **GRANTS** Ms. Devers's.

### I.     FACTUAL & PROCEDURAL BACKGROUND

The Summary Plan Description ("SPD") and Rules and Regulations ("R&R")[1] for the

Carpenters Trust Fund can be found at Exhibit 1 to the Price Declaration.

The SPD notes, in relevant part, as follows:

- "Only the full Board of Trustees is authorized to interpret the Plan.  The Board has discretion to decide all questions about the Plan, including questions about your eligibility for benefits and the amount of benefits payable to you."  Price Decl., Ex. 1 (SPD at 2).

- "A pre-service claim is a request for authorization of care or treatment that requires approval in whole or in part **before** the care or treatment is obtained (also called Utilization Review ('pre-authorization' or 'pre-certification')."  Price Decl., Ex. 1 (SPD at 81) (emphasis added).

- The purpose of the Utilization Review Program is "to help control increasing health care costs by avoiding unnecessary services or services that are more costly than others that can achieve the same result."  Price Decl., Ex. 1 (SPD at 56).

- Under the Plan, "**prior approval of services** is required for the following: . . . certain prescription Drugs (must be approved by the Plan's pharmacy benefit manager)."  Price Decl., Ex. 1 (SPD at 81) (emphasis in original); *see also* Price Decl., Ex. 1 (SPD at 61) (stating that "[c]ertain drugs require Utilization Review" by the pharmacy benefit manager, also known as "PBM").  Express Scripts is the Plan's pharmacy benefit manager (also known as "PBM").  *See* Price Decl., Ex. 1 (SPD at 61).

- "Off label use of drugs (for an indication other than described in the FDA approved

---

[1] The Price Declaration refers to the R&R as the "Plan Rules."  *See* Price Decl. ¶ 4.

1    drug label) will be allowed if prior approval is first obtained from the PBM."[2]

2    Price Decl., Ex. 1 (SPD at 63).

3    •    "To request Utilization Review of a drug, your Physician should call Express

4    Scripts . . . ." Price Decl., Ex. 1 (SPD at 63); *see also* Price Decl., Ex. 1 (SPD at

5    82) (stating that "your Physician [should] call Express Scripts . . . to obtain pre-

6    authorization for any Drug requiring Utilization Review").

7    •    "If you disagree with the decision made on your Physician's request for Utilization

8    Review, you may appeal it." Price Decl., Ex. 1 (SPD at 63).

9    •    Appeals of pre-service claim denials that involve "prescription drugs should go to

10    the pharmacy benefit manager (Express Scripts)." Price Decl., Ex. 1 (SPD at 86).

11    As part of the review process, "[a] different person will review the appeal than the

12    person who originally made the initial adverse benefit determination on the claim,"

13    and "[t]he reviewer will not give deference to the initial adverse benefit

14    determination." Price Decl., Ex. 1 (SPD at 86). In addition, "[t]he Board [of

15    Trustees for the Carpenters Trust Fund] may grant a personal hearing to receive and

16    hear any evidence or argument you believe cannot be presented satisfactorily by

17    correspondence." Price Decl., Ex. 1 (SPD at 86). "If the claim was denied on the

18    basis of a medical judgment (such as a determination that the treatment of service

19    was not Medically Necessary . . . ), a health care professional who has appropriate

20    training and experience in a relevant field of medicine will be consulted." Price

21    Decl., Ex. 1 (SPD at 86). The appeal will be decided "within 30 days of receipt of

22    the appeal." Price Decl., Ex. 1 (SPD at 92) (emphasis omitted).

23    •    "For any claims asserted under the Plan or against the Fund or the denial of a claim

24    to which the right to review has been waived, the decision of the Board or its

25    designated Appeals Committee with respect to a petition for review is final and

26

27    ───────────────
[2] For purposes of this order, the Court need not address the lack of any explanation as to what

28    factors may be considered by the PBM in determining whether the off-label use should be
approved.

3

1  binding upon all parties, subject only to any civil action you may bring under

2  ERISA.  Following issuance of the written decision of the Board on an appeal,

3  there is no further right of appeal to the Board or right to arbitration."  Price Decl.,

4  Ex. 1 (SPD at 87).

5  In turn, the R&R provides, in relevant part, as follows:

6  • "The Board of Trustees has the exclusive right and discretion to construe and

7  interpret the Plan and is the sole judge of the standard of proof required in any

8  claim and the application and interpretation of the Plan.  Any dispute as to

9  eligibility, type, amount or duration of benefits or any right or claim to payments

10  from the Fund will be resolved by the Board or its duly authorized designee under

11  and pursuant to the provisions of the Plan and the Trust Agreement, and its decision

12  is final and binding upon all parties, subject only to judicial review as may be in

13  harmony with federal labor law."  Price Decl., Ex. 1 (R&R, Article 9, § 9.01(a)).

14  • Prescription drug benefits are addressed in Article 5 of the R&R.  *See* Price Decl.,

15  Ex. 1 (R&R at 129).  Section 5.04 addresses exclusions from prescription drug

16  coverage.  Of particular note, § 5.04(j) provides that no benefits will be provided

17  for "[a]ny Drugs not reasonably necessary for the care or treatment of Illness or

18  Injury."  Price Decl., Ex. 1 (R&R, Article 5, § 5.04(j).  Section 5.04(l) provides that

19  no benefits will be provided for "[m]edications with no federal Food and Drug

20  Administration (FDA) approved indications.  Off label use of prescriptions (for an

21  indication other than described in the FDA approved drug label) will be allowed if

22  prior approval is first obtained from the Pharmacy Benefit Manager."  Price Decl.,

23  Ex. 1 (R&R, Article 5, § 5.04(l)).

24  It appears that, on November 17, 2017, Ms. Devers (or her doctor) made a request to

25  obtain Chemet under the employer welfare benefit plan (*i.e.*, the Carpenters Trust Fund).  On

26  November 26, 2017, the request for coverage was denied.  The denial letter, issued by Express

27  Scripts, stated as follows:

28  As we informed your doctor, we are unable to approve this request

4

for the following reason(s):

- Coverage of the requested medication is provided for acute lead poisoning, acute arsenic intoxication/poisoning, or acute mercury intoxication/poisoning. Coverage cannot be authorized at this time.

In accordance with your plan provisions for drug coverage, a review has been performed. The review uses the plan's rules and is based on FDA-approved prescribing and safety information, clinical guidelines and uses that are considered reasonable, safe and effective. . . .

You or your representative may appeal this decision . . . .

Please send your appeal request in writing to:
ATN: CLINICAL APPEALS DEPARTMENT
EXPRESS SCRIPTS

Price Decl., Ex. 2 (CarpH&WID_000234).[3]

On December 8, 2017, Ms. Devers lodged an appeal with Express Scripts. In her appeal, Ms. Devers explained that she first developed skin lesions in 1995 and that, in 2000, she was diagnosed with Grover's disease, also known as "transient acantholytic dermatosis." Price Decl., Ex. 2 (CarpH&WID_000231). She tried many treatments but none proved effective – *e.g.*, one treatment was "very painful" and would provide only "6 to 8 weeks of relief until the lesions returned." Price Decl., Ex. 2 (CarpH&WID_000231). "In 2005, Dr. Paul Dantzig, in conjunction with Columbia University, published a paper connecting mercury toxicity with Grover's disease," Price Decl., Ex. 2 (CarpH&WID_000231), and therefore Ms. Devers tried Chemet as a treatment for her skin lesions in 2006. Her skin healed but, "[o]ver time, it became apparent that the healing was not permanent" and thus she had to "periodically retreat with Chemet," approximately 2-4 times a year. Price Decl., Ex. 2 (CarpH&WID_000231-32). In or about 2012, Ms. Devers also used Chemet to treat a skin problem that appeared to be unrelated to Grover's disease. *See* Price

---

[3] For purposes of this order, the Court assumes that Express Scripts's denial clearly communicated that it was predicated on the § 5.04(l) exclusion – *i.e.*, that the denial was not in any way ambiguous as to its basis. *See* Price Decl., Ex. 1 (R&R, Article 5, § 5.04(l)) (providing that no benefits will be provided for "[m]edications with no federal Food and Drug Administration (FDA) approved indications" and "[o]ff label use of prescriptions (for an indication other than described in the FDA approved drug label) will be allowed if prior approval is first obtained from the Pharmacy Benefit Manager"); *see also* 29 C.F.R. § 2560.503-1(g)(1) (providing that notification of an adverse benefit determination "shall set forth, in a manner calculated to be understood by the claimant – (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based;" etc.).

1    Decl., Ex. 2 (CarpH&WID_000232) (referring to a "new condition" that "was not Grover['s]

2    disease").  Ms. Devers had a urine test at that time "to see what the Chemet was pulling out" and

3    learned that she had a high level of lead.  Price Decl., Ex. 2 (CarpH&WID_000232).  Ms. Devers

4    stated that she "cannot have healthy skin without periodic treatments with Chemet" and indicated

5    that she takes the "drug as seldomly as possible to address" the heavy metals in her body (*i.e.*,

6    mercury and lead).  Price Decl., Ex. 2 (CarpH&WID_000232).

7         According to Carpenters, Express Scripts received the appeal on December 13, 2017, and

8    denied it on December 15, 2017.  *See* Price Decl., Ex. 3 (CarpH&WSuppD_000009).  In the

9    denial, Express Scripts stated that "[a] panel (consisting of a medical director and two licensed

10   clinical pharmacists who were not involved in the prior determination) has reviewed [the] appeal"

11   and,

12             [a]s we informed your doctor, we are unable to approve this request
               for the following reasons(s):

13
                 • Coverage of the requested medication is provided for acute
14                 lead poisoning, acute arsenic intoxication/poisoning, or acute
                   mercury intoxication/poisoning.  Coverage cannot be
15                 authorized at this time.  The information provided on level 1
                   appeal indicates that the [sic] you have an acute exposure to
16                 mercury and lead in the form of painful skin conditions
                   including Grover's disease.  However, this does not meet the
17                 above conditions for coverage.

18             In accordance with your plan provisions for drug coverage, a review
               has been performed.  The review uses the plan's rules and is based
19             on FDA-approved prescribing and safety information, clinical
               guidelines and uses that are considered reasonable, safe and
20             effective. . . .

21             This is a final and binding decision.  Our decision does not reflect
               any view about the medical appropriateness of the medication.  The
22             ultimate decision on your medical care must be made by you and
               your physician.  This appeal decision only determines what, if any,
23             of the service or supply is payable under the terms of your plan's
               benefit.
24
               . . . . Under Section 502(a) of ERISA, you . . . have the right to bring
25             a civil action if your final appeal is denied.  You should carefully
               review the terms of your Summary Plan Description (SPD) to see if
26             there is a specific time within which a civil action must begin.

27

28

6

United States District Court
Northern District of California

1  Price Decl., Ex. 3 (CarpH&WSuppD_000009).[4]

2      Although the denial of the appeal by Express Scripts indicates that it was issued on

3  December 15, 2017, it appears that Ms. Devers never received a copy of the denial.  For example,

4  on December 21, 2017 (*i.e.*, almost a week after the denial of the appeal), Ms. Devers sent an

5  email to Carpenters, stating that she was writing to "clarify that I submitted information to you

6  regarding coverage of Chemet as part of my appeal to the Trustees.  Please add this note to the

7  information previously submitted and please proceed with the appeal."  Price Decl., Ex. 2

8  (CarpH&WID_000229).  Ms. Devers also sent a separate email to Carpenters on December 21,

9  2017, stating that "I am hoping that we can talk next week.  I need to understand the timing of this

10  process and why my next step is *if* you deny coverage."  Price Decl., Ex. 2

11  (CarpH&WID_000205) (emphasis added).  Finally, Ms. Devers sent an email to Carpenters on

12  January 3, 2018, noting that she would be sending information from her doctor's office[5] and

13  providing other information from her pharmacist, which she asked to be "add[ed] . . . to my

14  appeal."  Price Decl., Ex. 2 (CarpH&WID_000202).  These emails all indicate that Ms. Devers

15  was under the impression that her appeal was still pending (*i.e.*, had not been denied).

16      Moreover, the record suggests that Carpenters did not receive a copy of Express Scripts's

17  denial of the appeal either.  Notably, Carpenters did not initially provide a copy of the denial of the

18  appeal to Ms. Devers as part of the administrative record.  *See* Price Decl. ¶ 5 (noting that Exhibit

19  2 is the administrative record which was provided as part of the initial disclosures; Express

20  Scripts's denial of the appeal is found in Exhibit 3).  According to Carpenters, in March 2019,

21  when a mediation was taking place during this litigation, it noticed for the first time that

22  

23  [4] As above, for purposes of this order, the Court assumes that Express Scripts's denial clearly
communicated that it was predicated on the § 5.04(l) exclusion.

24      Also, for purposes of this order, the Court assumes that Express Scripts denied the appeal
for reasons *beyond* the mere fact that the use was off label.  If Express Scripts could deny prior

25  approval simply because a use was off label, then there would no reason to have a provision in the
plan stating that off-label use would require prior approval.

26  [5] Ms. Devers's doctor's office provided a letter dated January 3, 2018, from a nurse practitioner

27  (as the treating physician had passed away), stating that Ms. Devers "requires Chemet for her
medical care.  She tried many additional and alternative treatments over many years, before Dr.

28  Dantzig published his research.  There is no other treatment that is effective in controlling her
Grover's disease."  Price Decl., Ex. 2 (CarpH&WID_000200).

1  there was no documentation that Express Scripts . . . had received or
2  heard an appeal on Ms. Devers' initial claim. There was also no
   record of Express Scripts processing or ruling on an appeal by Ms.
3  Devers in The Fund's files. I thought this was odd, given the fact
   that Express Scripts was given the authority under the Plan Rules to
4  process and make decisions regarding claims and appeals of denial
   of prescription drug benefits under the Plan. I therefore requested
5  that Express Scripts send us any and all documents (if any) they had
   regarding an appeal Ms. Devers made after they denied the claim in
6  this case.

7  Express Scripts forwarded to the Fund Office documents pertaining
   to an appeal that Ms. Devers filed after her initial claim was denied.
8  . . . The decision denying the appeal and the reasons for that denial
   was [sic] sent only to Ms. Devers and her doctor. The Fund did not
9  have copies of the appeal decision in its custody when it proceeded
   to hear Ms. Devers['s] appeal on January 11, 2018.

10  Price Decl. ¶ 6.

11       On January 11, 2018 (*i.e.*, several weeks after the December 15 denial of the appeal by

12  Express Scripts), a hearing panel for the Carpenters Trust Fund held a hearing on Ms. Devers's

13  appeal. *See* Price Decl., Ex. 2 (CarpH&WID_000175). Then, on the same day, the Carpenters

14  AO issued a letter regarding the appeal, stating as follows:

15  The Trustees have carefully considered all the comments,
    documents, records and other information provided and applied the
16  terms of the Plan that apply to your request for review. For the
    reasons set out below, the Trustees have determined that the benefits
17  being requested are not covered by the Plan, and accordingly, the
    decision following review is that your request for Request [sic] to
18  obtain prescription drug, Chemet must be denied, subject to
    reconsideration.
19
20  **Specific Reason for Denial**

21  No benefits will be provided for any Drugs not reasonably necessary
    for the care and treatment of illness or injury.

22  **Applicable Plan Provisions**

23  5.04.j, Plan A[6]

24  . . . .

25  This decision on review is the Plan's final decision. You have the
26  right to bring a civil action under ERISA Section 502(a) provided

27  _____
28  [6] As noted above, § 5.04(j) provides that no benefits will be provided for "[a]ny Drugs not
    reasonably necessary for the care or treatment of Illness or Injury." Price Decl., Ex. 1 (R&R,
    Article V, § 5.04(j)).

8

1    civil action is taken within two years of the date of this benefit
     denial.

2    Price Decl., Ex. 2 (CarpH&WID_000190).

3        In July 2018, Ms. Devers initiated the instant action.

4                        **II.    DISCUSSION**

5    A.    Legal Standard

6        As an initial matter, the Court bears in mind that it has two different procedural motions

7    before it: (1) Carpenters' motion for summary judgment pursuant to Rule 56 and (2) Ms. Devers's

8    motion for judgment pursuant to Rule 52.

9        Rule 56 provides that a "court shall grant summary judgment if the movant shows that

10   there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of

11   law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a

12   reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

13   242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there

14   must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

15   At the summary judgment stage, evidence must be viewed in the light most favorable to the

16   nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at

17   255. Where a defendant moves for summary judgment on a claim for which the plaintiff has the

18   burden of proof, the defendant may prevail simply by pointing to the plaintiff's failure "to make a

19   showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

20   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

21       Rule 52 concerns, *inter alia*, findings and conclusions by a court in the context of a bench

22   trial. It provides in relevant part as follows: "*In General.* In an action tried on the facts without a

23   jury or with an advisory jury, the court must find the facts specially and state its conclusions of

24   law separately." Fed. R. Civ. P. 52(a)(1). In *Kearney v. Standard Insurance Co.*, 175 F.3d 1084

25   (9th Cir. 1999), the Ninth Circuit indicated that, where there is an ERISA dispute, a trial based on

26   the administrative record alone may be conducted. That is,

27           the district court may try the case on the record that the
             administrator had before it. This is vastly less expensive to all
28           parties, accomplishes the policies enacted as part of the statute, and

> also gives significance, which would otherwise largely evaporate, to
> the administrator's internal review procedure required by the statute.

*Id.* at 1095; *see also id.* at 1094 (stating that "[a] full trial de novo in any ERISA dispute where

there was a genuine dispute of fact as to whether the individual qualified for a benefit would

undermine" the policies underlying ERISA; "[t]he means that suggests itself for accomplishing

trial of disputed facts, while preserving the value of the fiduciary review procedure, keeping costs

and premiums down, and minimizing diversion of benefit money to litigation expense, is trial on

the administrative record, in cases where the trial court does not find it necessary under *Mongeluzo*

to consider additional evidence").[7]  "In a trial on the record, but not on summary judgment, [a]

judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely

true." *Id.* at 1095.

B.    Standard of Review

Whether the Court is considering Carpenters' summary judgment motion or Ms. Devers'

request for a trial based on the administrative record, the parties agree that the Court evaluates

Carpenters' substantive decision to deny benefits for an abuse of discretion.  *See* Defs.' Mot. at 4

(noting the parties' "stipulat[ion] that the District Court in this case should use the abuse of

discretion standard in reviewing the decision that Defendants reached in denying Plaintiff's claim

for the drug").

> Under this deferential standard, a plan administrator's decision "will
> not be disturbed if reasonable."  This reasonableness standard
> requires deference to the administrator's benefits decision unless it is
> "(1) illogical, (2) implausible, or (3) without support in inferences
> that may be drawn from the facts in the record."

*Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012).  There is also an abuse

of discretion if a decision is rendered "without any explanation." *Johnson v. Trs. of W.*

*Conference of Teamsters Pension Tr. Fund*, 879 F.2d 651, 654 (9th Cir. 1989).

The above applies where an ERISA plaintiff is challenging a substantive decision to deny.

However, an ERISA plaintiff may also claim an abuse of discretion based on the failure of a plan

---

[7] In *Mongeluzo*, the Ninth Circuit "held . . . that the district court had discretion to allow evidence that was not before the plan administrator 'only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review.'" *Kearney*, 175 F.3d at 1090.

1  or plan administrator to follow applicable procedures as provided for under ERISA.  *See Abatie v.*

2  *Alta Health & Life Ins. Co.*, 458 F.3d 955, 959 (9th Cir. 2006) (stating that, "when a decision by

3  an administrator utterly fails to follow applicable procedures, the administrator is not, in fact,

4  exercising discretionary powers under the plan, and its decision should be subject to de novo

5  review," but "[l]esser irregularities . . . do not remove the decision from abuse of discretion

6  review"), *abrogated on other grounds by Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  *Cf.*

7  *Dimery v. Reliance Standard Life Ins. Co.*, 597 F. App'x 408, 409 (9th Cir. 2015) (stating that

8  "ERISA procedural violations do not alter the standard of review unless the violations cause the

9  beneficiary substantive harm"); *Gatti v. Reliance Std. Life Ins.*, 415 F.3d 978, 985 (9th Cir. 2005)

10  (stating that "procedural violations of ERISA do not alter the standard of review unless those

11  violations are so flagrant as to alter the substantive relationship between the employer and

12  employee, thereby causing the beneficiary substantive harm").  For a procedural violation, a

13  remand to the plan is the typical remedy.  *See Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035

14  (9th Cir. 2006) (stating that "the usual remedy for a violation of § 1133 [which governs claims

15  procedure] is 'to remand to the plan administrator so the claimant gets the benefit of a full and fair

16  review'").

17  C.    Reason for Denial of Ms. Devers's Claim for Benefits

18        The threshold dispute between the parties is why Ms. Devers's claim for benefits was

19  denied on appeal, thus raising the question which body issued the final decision.

20        • According to Ms. Devers, her appeal was denied because Carpenters determined

21          that Chemet was not a medical necessity, as the Trustees found on **January 11,**

22          **2018**. *See* Price Decl., Ex. 1 (R&R, Article 5, § 5.04(j)) (providing that no benefits

23          will be provided for "[a]ny Drugs not reasonably necessary for the care or

24          treatment of Illness or Injury"); the final decision was issued by the hearing panel

25          for the Carpenters Trust Fund.

26        • According to Carpenters, the appeal was denied because Ms. Devers's use of

27          Chemet was "off label," and, on **December 15, 2017**, Express Scripts (on behalf of

28          Carpenter) did not give prior approval to the off-label use. *See* Price Decl., Ex. 1

11

1    (R&R, Article 5, § 5.04(l)) (providing that no benefits will be provided for

2    "[m]edications with no federal Food and Drug Administration (FDA) approved

3    indications" and "[o]ff label use of prescriptions (for an indication other than

4    described in the FDA approved drug label) will be allowed if prior approval is first

5    obtained from the Pharmacy Benefit Manager"). Carpenters thus contends Express

6    Scripts rendered the final decision.

7    In sum, Ms. Devers deems the final decision of Carpenters to be the Trustees' denial of her appeal

8    on January 11, 2018, whereas Carpenters argues that the Trustees' denial should, in effect be

9    ignored, given that Express Scripts issued its final denial of the appeal several weeks earlier on

10   December 15, 2017.

11         The Court rejects Carpenters' position. Even assuming that Ms. Devers's appeal would

12   ordinarily have been decided by Express Scripts, *see* Price Decl., Ex. 1 (SPD at 86) (stating that

13   appeals of pre-service claim denials – where the claim involves prescription drug benefits –

14   "should go to the pharmacy benefit manager (Express Scripts)"), the Trustees (for whatever

15   reason) did not find out about Express Scripts's denial of the appeal and, instead of instructing

16   Express Scripts to rule on Ms. Devers's appeal, decided to address the appeal themselves – as they

17   were entitled to do under the SPD and R&R. *See, e.g.*, Price Decl., Ex. 1 (SPD at 86) (providing

18   that "[t]he Board may grant a personal hearing to receive and hear any evidence or argument you

19   believe cannot be presented satisfactorily by correspondence"); Price Decl., Ex. 1 (SPD at 2)

20   (providing that "[t]he Board has discretion to decide all questions about the Plan, including

21   questions about your eligibility for benefits and the amount of benefits payable to you"); Price

22   Decl., Ex. 1 (R&R, Article 9, § 9.01(a)) (providing that "[a]ny dispute as to eligibility, type,

23   amount or duration of benefits or any right or claim to payments from the Fund will be resolved

24   by the Board or its duly authorized designee under and pursuant to the provisions of the Plan and

25   the Trust Agreement"). Therefore, only evidence that was considered by the Trustees, as the

26   ERISA decisionmaker, counts as being part of the administrative record. *See Kearney*, 175 F.3d at

27   1090-91 (stating that, "[i]f a court reviews the administrator's decision, whether de novo . . . or for

28   abuse of discretion, the record that was before the administrator furnishes the primary basis for

12

United States District Court
Northern District of California

1  review"). Here, the Trustees, as the ERISA decisionmaker, did not consider Express Scripts's

2  denial of the appeal (indeed, did not even know about it at the relevant time), and thus Express

3  Scripts's denial of the appeal cannot be a part of the administrative record. In short, Express

4  Scripts's denial of Ms. Devers's appeal is immaterial and her appeal was ultimately denied by the

5  Trustees based on the Trustees' finding that Chemet was not a medical necessity (*i.e.*, Ms.

6  Devers's position). Only the Trustees' decision is subject to review herein.

7  D.     Medical Necessity

8         The Court now turns to the issue of whether the Trustees' decision was reasonable. *See*

9  *Stephan*, 697 F.3d at 929 (stating that the "reasonableness standard requires deference to the

10 administrator's benefits decision unless it is '(1) illogical, (2) implausible, or (3) without support

11 in inferences that may be drawn from the facts in the record'"). Under the ERISA regulations,

12 where there is an "adverse benefit determination by a group health plan" and the "determination is

13 based on a medical necessity . . . exclusion or limit," "either an explanation of the scientific or

14 clinical judgment for the determination, applying the terms of the plan to the claimant's medical

15 circumstances, or a statement that such explanation will be provided free of charge upon request"

16 is required. 29 C.F.R. § 2560.503-1(g)(1)(v)(B). The SPD contains a similar provision. *See also*

17 Price Decl., Ex. 1 (SPD at 85) (providing that "the specific reason(s) for the [adverse benefit]

18 determination" must be provided; also providing that, "if the determination was based on the

19 absence of medical necessity . . . , a statement that an explanation of the scientific or clinical

20 judgment for the determination is available upon written request at no charge").

21        In the instant case, the Trustees' denial of the appeal did not provide an explanation of the

22 scientific or clinical judgment for the determination as required by law and the SPD.[8] Such a

23 substantial procedural violation constitutes an abuse of discretion, *see Abatie*, 458 F.3d at 959, for

24 which remand would normally be warranted. *See Chuck*, 455 F.3d at 1035. However, the Court

25

26 ────────────────────────
[8] While the denial of the appeal did state, in general terms, that "[y]ou are entitled to receive, upon
27 request and free of charge, reasonable access to, and copies of, all documents, records, and other
   information relevant to your claim for benefits," Price Decl., Ex. 2 (CarpH&WID_000190), the
28 denial did not specifically state that Ms. Devers could get a copy of the explanation of the
   scientific or clinical judgment for the determination.

1    sees no value in remanding to the plan given the specific circumstances at hand.  More

2    specifically, there is no evidence in the record upon which the Trustees could rely to support a

3    ruling against Ms. Devers.  There is nothing in the administrative record to support the conclusion

4    of no medical necessity.  On the other hand, the record contains concrete evidence supporting Ms.

5    Devers's position that Chemet was in fact medically necessary.  This includes the Dantzig paper

6    connecting mercury toxicity with Grover's disease; the results of a urine test (indicating a high

7    level of heavy metals); a letter from Ms. Devers's doctor's office stating that "[t]here is no other

8    treatment [*i.e.*, other than Chemet] that is effective in controlling [Ms. Devers's] Grover's

9    disease," Price Decl., Ex. 2 (CarpH&WID_000200); and the plan's prior coverage of Chemet.

10   Based on the record, the Trustees' finding that Chemet was not a medical necessity was

11   unreasonable whether under de novo or abuse of discretion review.  Ms. Devers is thus entitled to

12   benefits under the plan.

13        The Court orders the parties to meet and confer to see if they can reach agreement on the

14   exact award of benefits due under the plan.  During the meet and confer, the parties should also

15   discuss the issue of attorney's fees.  Finally, during the meet and confer, the parties should discuss

16   injunctive relief.  The Court notes that, although Ms. Devers requested an injunction at the hearing

17   with respect to her claim for breach of fiduciary duty (and the Court indicated its inclination to

18   grant relief), her motion did not expressly address the claim for breach of fiduciary duty nor did

19   expressly request injunctive relief.  *See, e.g.*, Pl.'s Mot. at 13 (asking "for an award of benefits" as

20   well as "prejudgment interest, attorneys fees and costs," but not mentioning injunctive relief).

21   Moreover, to the extent Ms. Devers is simply asking for an order requiring Carpenters to comply

22   with ERISA and its regulations (as she stated at the hearing), "obey-the-law" injunctions are

23   generally disfavored.  *See, e.g.*, *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841-42 (7th Cir. 2013)

24   (discussing concerns with "[a]n injunction that does no more than order a defeated litigant to obey

25   the law" – *e.g.*, overbreadth and vagueness, although adding that such an injunction may be

26   appropriate in certain circumstances, for instance, "where the evidence suggests that the proven

27   illegal conduct may be resumed").

28

14

1

### III.     <u>CONCLUSION</u>

2      For the foregoing reasons, the Court denies Carpenters' motion for summary judgment and

3 grants Ms. Devers's motion for judgment.  With respect to Ms. Devers's motion, the necessary

4 findings of fact and conclusions of law are embedded in the discussion above; however, for the

5 sake of clarity, the Court reiterates as follows.

6      • Carpenters ultimately denied coverage based on lack of medical necessity.

7      • Carpenters' decision failed to comply with 29 C.F.R. § 2560.503-1(g)(1)(v)(B) and

8        the SPD.

9      • There is no evidence in the administrative record to support a lack of medical

10       necessity.  In contrast, the only evidence in the administrative record establishes

11       that Chemet was medically necessary for Ms. Devers.

12     • The Court therefore holds that Carpenters erred, under either de novo review or

13       review for abuse of discretion, in denying coverage for Chemet.

14     • Ms. Devers is entitled to benefits.

15     As discussed above, the parties are to meet and confer to address remaining issues.  The

16 parties shall report back on their meet and confer within three weeks of the date of this order.

17     This order disposes of Docket Nos. 35 and 36.

18

19     **IT IS SO ORDERED**.

20

21 Dated: August 7, 2019

22

23 _____

24 EDWARD M. CHEN
   United States District Judge

25

26

27

28

15